J. H. Hillman & Sons Company v. Commissioner.
J. H. Hillman & Sons Co. v. Commissioner
Docket No. 104590.
United States Tax Court
1943 Tax Ct. Memo LEXIS 309; 2 T.C.M. (CCH) 91; T.C.M. (RIA) 43234; May 12, 1943
*309 Thomas Watson, Esq., for the petitioner. J. Harrison Miller, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of deficiencies in income tax, excess profits tax and personal holding company surtax for 1934 in the respective amounts of $57,079.36, $13,256.13 and $123,136.88. The issues are whether the amount of $394,643.95 is deductible as a bad debt or a loss; whether the sum of $448,167.18 (as originally claimed) is deductible as a bad debt; and whether the respondent erred in not reducing undistributed adjusted net income as provided in section 351 of the Revenue Act of 1934 by $879,055.15 paid in 1934 to retire indebtedness incurred prior to January 1, 1934. The stipulations of facts filed by the parties are incorporated herein by reference as part of our findings of fact. Material portions thereof will be set forth in the findings of fact made also from other evidence. Findings of Fact Petitioner is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pa. During the taxable year it was a personal holding company as defined by section 351 of the Revenue Act of 1934. *310 At the close of the years 1930 to 1934, inclusive, substantially all of the stock of petitioner was owned by J. H. Hillman, Jr., Ernest Hillman, A. B. Sheets and his family, the Hecla Coal & Coke Co., hereinafter referred to as Hecla (acquired from the Hillman Investment Co., hereinafter referred to as the Investment Co., on December 28, 1934), and the Hillman Land Co., a corporation whose stock was owned by J. H. Hillman, Jr. and his family. On January 1, 1932, all of 5,000 shares of stock of the Investment Co. was owned by J. H. Hillman, Jr., A. B. Sheets, Ernest Hillman, and James F. Hillman. In 1932 they transferred 3,750 shares of the stock to Hecla, 750 shares to the Hillman Coal & Coke Co., hereinafter referred to as Hillman, and the remaining 500 shares to petitioner. On July 31, 1934, Hillman transferred its stock to petitioner. The petitioner owned a majority of the voting stock of Hecla, Hillman, and Thompson Connellsville Coke Co., hereinafter referred to as Thompson, and all of the stock of the Luzerne Coal & Coke Co., a personal holding company, hereinafter referred to as Luzerne. Some of these corporations owned all of the stock of several other corporations. The principal *311 officers of petitioner, the Investment Co., Hecla, Hillman and Luzerne were J. H. Hillman, Jr., A. B. Sheets, Ernest Hillman, R. W. Flenniken, and Thomas Watson. They were also directors of the corporations. Petitioner, and other corporations, including Luzerne, filed a consolidated excess profits tax return and separate income tax returns for 1917. In May 1918 Luzerne paid $34,797.64 to petitioner for its share of the aggregate 1917 income and excess profits tax, although tax liability of Luzerne under the returns was only $22,779.10. The respondent notified Luzerne on February 13, 1924, of an income and excess profits tax liability of $50,476.74 for 1917. The tax liability was paid by Luzerne in June 1925, in connection with which a credit for only $22,779.10 of the $34,797.64 was allowed by the Commissioner for the tax payment made to petitioner. On April 10, 1926, Luzerne charged petitioner with the excess payment of $12,018.54 made to it for 1917 taxes. The tax liability of petitioner for 1917 was settled on August 7, 1926. Petitioner and Hillman, and subsidiaries of Hillman filed a consolidated return for 1919, disclosing tax liability of $184,634.24. Hillman and its subsidiaries *312 contributed to petitioner the aggregate amount of $95,985.61 as their share of the total tax liability. Respondent determined that Hillman and its subsidiaries were not affiliated with petitioner in 1919 and thereafter they filed a separate consolidated return. On July 31, 1926, he determined a deficiency against petitioner and its affiliates (not including Hillman) of $29,698.12 by deducting from tax liability of $214,332.26 the amount of $184,634.24, previously assessed and paid by petitioner, including the amount of $95,985.61 contributed by Hillman. Petitioner paid the deficiency and interest of $787 thereon on August 7, 1926, and waived its right to file an appeal to this Court. On March 11, 1927, respondent notified Hillman of deficiencies for 1919, 1920 and 1921, including a deficiency of $141,346.91 in income and excess profits taxes under the consolidated return it and its affiliates filed for 1919, with no amount previously assessed, Hillman appealed the proposed deficiencies to this Court. On February 6, 1933, Hillman offered to settle its tax liabilities for the years 1918, 1919, 1920 and 1921 for certain amounts, including a deficiency of $132,965.79 for 1919 and no *313 deficiency for 1920, "provided the 1920 tax case of J. H. Hillman & Sons Company is promptly settled upon the basis of the compromise offer which has been submitted to you." The petitioner and other corporations, including Hecla, Thompson and the Hillman Transportation Co., hereinafter referred to as the Transportation Co., filed a consolidated return for 1920. The entire amount of tax shown in the return, $3,501,809.54, was assessed against, and paid by, petitioner. Each corporation listed in the return as a subsidiary paid to petitioner in 1921 an amount estimated as its share of the tax. The contributions made by Thompson and its subsidiary, the Lilly Run Supply Co., were $386,744.75 and $7,899.20, respectively, a total of $394,643.95. The amounts contributed by the Transportation Co. and the Dravosburg Dock & Construction Co., hereinafter referred to as Dravosburg, a subsidiary of the Transportation Co., were $364,410.70 and $41.04, respectively, a total of $364,451.74. On January 16, 1926, the respondent notified petitioner that Thompson, Hillman, Hecla, and the Diamond Coal & Coke Co., hereinafter referred to as Diamond, were not affiliated with it for 1920; that the income *314 taxes assessed against it for that year appeared to be $3,328,969.43 in excess of the amount due and suggested that a refund claim be filed. On November 8, 1926, the petitioner issued a note in favor of Luzerne for the overpayment of $12,018.54 on its 1917 tax liability; notes in the aggregate amount of $95,985.61 in favor of Hillman and its subsidiaries for the contributions made by them for 1919 tax liability, and notes in the aggregate amount of $364,451.74 and in the amount of $394,643.95 in favor of the Transportation Co. and Thompson and their subsidiaries, respectively, for their contributions to the 1920 consolidated tax liability. At the same time other notes were issued for contributions made by other corporations to petitioner for 1920 taxes. The notes were payable on demand and contained notations reading "Without defalcation, for value received" and that they were payable "with the proper interest thereon." The notes were entered in the bills payable account of petitioner. The notes for 1920 tax contributions were issued to record the payments, pending final determination of, and adjustment among the corporations for 1920 tax liability, and to enable the payees to collect *315 from petitioner the amounts of their payments in the event they made additional tax payments to the Commissioner without being allowed credit for their payments to petitioner. Petitioner informed Thompson by letter that its understanding with the Bureau of Internal Revenue was that the taxes paid by it under the consolidated return filed for 1920 were refundable only to petitioner and that the note was in repayment of the amounts paid to petitioner in 1921 as Thompson's and the Lilly Run Supply Co.'s share of the tax liability shown in the return. Thompson accepted the note in repayment of the money contributed by it and its subsidiary and informed petitioner that: We understand that we will be called upon to make a separate settlement with the Internal Revenue Department for the amount of our tax liability for the year 1920. When the occasion for paying these taxes arises, we will either ask you to pay the note or will have it discounted. In 1926 the respondent made separate assessments against several of the corporations included in the consolidated return filed for 1920 upon the ground that they were not affiliated with petitioner. In January 1927 petitioner believed that respondent *316 would make separate assessments for the same year against Thompson, the Transportation Co. and other corporations in the group and requested respondent to refund to it the overassessment of $3,328,969.43, referred to in his letter of January 16, 1926. In February 1927 petitioner informed respondent that it had refunded to the corporations included in the consolidated return for 1920 the amounts paid by them as their share of the tax shown to be due on the return. At the same time Thompson, the Transportation Co., Dravosburg and other corporations consented to separate assessment against them and released respondent from liability to them for any refund he might make to petitioner covering the whole or any part of the tax paid by petitioner on their tax liability for 1920. On December 20, 1927, the respondent mailed a notice of deficiency to Thompson disclosing tax liability for 1920 of $520,493.78, of which $355,293.60 had been previously assessed, and tax liability of $9,270.88 of the Lilly Run Supply Co., of which $9,209.76 had been assessed. Thompson filed a petition with this Court. One of the errors alleged was that the taxes assessed it included $355,293.60 charged against *317 the petitioner herein instead of being charged against Thompson. On December 29, 1927, the respondent determined tax liability of $346,362.60 against the Transportation Co., of which $274,086.63 had been assessed, and $2,038.14 against Dravosburg, of which $805.42 had been assessed, a total tax liability of $348,400.74 and deficiency of $73,508.69. No suit was filed for recovery of any part of the taxes. The deficiency was paid by the petitioner and on April 20, 1929, was credited to the note issued to the Transportation Co. on November 8, 1926, for $364,410.70. On December 19, 1927, the board of directors of petitioner adopted a resolution ratifying the sale of its stock of the Waynesburg Gas Coal Co. to Thompson on June 30. 1927, in consideration of the surrender of petitioner's note for $394,643.95, plus interest thereon of $13,794.92, a total of $408,438.87, and the giving of a note for $405,191.28 secured by the stock sold. The total of $408,438.87 of the note and interest was debited to bills payable on petitioner's books by an entry dated June 30, 1927. On April 3, 1929, petitioner filed a petition with the Court of Claims in which it sought a refund of $3,333,076.37 arising *318 through overpayment of income and excess profits taxes for 1920. On March 30, 1934, petitioner and other corporations involved in the consolidated return filed for 1920 offered to settle the proceeding instituted by petitioner in the Court of Claims, the proceeding filed by Thompson with this Court, and other tax matters for the sum of $1,021,000, plus interest. Subsequently the respondent issued a certificate of overassessment in the name of petitioner in the amount of $1,152,021.08, plus interest of $39,683.51, a total of $1,191,704.59, based upon an adjusted tax liability of $3,223,296.39 of all of the corporations included in the consolidated return filed for 1920 and assessments, allocated to the various corporations. The determination included the following: Allocation of
Tax Liability
Tax Assessed
Overassessment
Transportation Co.
$346,362.60
$ 346,362.60
None
Dravosburg
2,038.14
2,038.14
None
Total
$348,400.74
$ 348,400.74
None
Hillman
Data
$1,011,952.92
[1]Merchants Coal Corp.
not
26,368.63
Not
Orenda Coal Co.
segregated
8,019.14
segregated
Total
$924,317.37
$1,046,340.69
$122,023.32
Thompson
$355,293.60
$ 355,293.60
None
Lilly Run Supply Co.
9,270.88
9,270.88
None
Total
$364,564.48
$ 364,564.48
None
*319 The overassessment of $1,191,704.59, plus interest of $618,989.97, was refunded to petitioner in July 1934. Hillman and the respondent agreed upon a deficiency of $132,965.79 for 1919, and no deficiency for 1920, and decisions pursuant thereto were subsequently entered by this Court. In arriving at the agreed deficiency no credit was allowed for the $95,985.61 contributed to petitioner by Hillman and its subsidiaries, Orenda Coal Co. and Somerset Real Estate Co., as their share of the tax shown on the 1919 consolidated return. The amount of the agreed deficiency for 1919 plus interest of $67,258.48 was paid by Hillman on July 31, 1934. The letter to the Collector transmitting the check in payment stated that "Settlement has been held in abeyance pending settlement of the J. H. Hillman & Sons Company 1920 case." On July 31, 1934, petitioner settled the outstanding obligations arising from contributions made to it by the various corporations for 1917, 1919 and 1920 taxes, in connection with which the corporations surrendered the notes issued by petitioner on November 8, 1926. Luzerne, Hillman and the Transportation Co. received checks *320 for $21,467.12, $102,398.36 and $28,209.63, respectively, computed as follows: Luzerne: Note
$ 12,018.54
Interest
9,448.58
$ 21,467.12
Hillman: Note
$ 95,985.61
Interest
48,552.69
$144,538.30
Tax deficiency and
interest
42,139.94
$102,398.36
Transportation Co.: Notes
$364,451.74
Tax liability
348,400.74
$ 16,051.00
Interest
12,158.63
$ 28,209.63
The balance sheets of Thompson as of the close of 1933 and 1934 disclose assets and liabilities as follows: ASSETS
Dec. 31, 1934
Dec. 31. 1933
Permanent Assets
$ 668,166.26
$ 704,096.03
Investments (at cost)
Pledged as Collat-
eral
940,709.46
930,559.46
Sinking Fund Cash
48.89
48.89
Deferred Charges
15,056.51
12,175.31
Current Assets
18,698.56
26,373.43
$1,642,679.68
$1,673,253.12
LIABILITIES
First Mortgage Bonds
$ 88,262.50
$ 84,812.50
Other Secured Liabili-
ties
1,434,870.65
1,240,768.72
Provision for Federal
Taxes and Interest
0
956,043.05
Deferred Liabilities
6,728.29
13,916.12
Current Liabilities
832,826.48
118,487.70
Capital Stock
$3,000,000.00
$3,000,000.00
Reserve for Compen-
sation Insurance
8,965.71
15,001.05
Operating Deficit
$3,728,973.95
$3,755,776.02
$1,642,679.68
$1,673,253.12
*321 The first mortgage bonds were secured by the coal lands of Thompson in Fayette County, Pa. No interest had been paid on the bonds since June 1, 1929. The assets are listed at cost, except depreciable property, which is listed at cost less depreciation and depletion allowed for tax purposes. The permanent assets consisted primarily of coal lands, development, surface land, and plant and equipment, which, at December 31, 1934, were carried on the books at a value of $531,895.27, $42,331.38, $13,470.11, and $57,750.34, respectively. Investments at that time consisted of all of the stock of the Waynesburg Gas Coal Co. in the amount of $813,630.15, loans of $120,991.88 to the same corporation, and other stocks and bonds, including 100 shares of stock of the General Water Co., of a fair market value of $17,500, and 184 shares of stock of the Hillman Supply Co., of a fair market value of $22,080. The secured liabilities were payable to Hecla. The collateral consisted of all of Thompson's investments and a second mortgage on its coal lands, plant and equipment. The current liabilities of Thompson included $28,166.99 for property taxes, $217,975.70 for unpaid federal taxes and accrued interest *322 thereon, and $394,643.95 payable to petitioner in connection with the adjustment for 1920 taxes, plus interest of $145, 750.45 from June 30, 1927 to June 30, 1934. The books of Thompson also showed an operating loss of $86,257.82 in 1933 and $98,767.22 in 1934. On July 23, 1934, the board of directors of petitioner authorized and directed its officers to charge off as uncollectible the amount of $394,643.95 alleged to be due from Thompson. The account was charged off as worthless by petitioner on July 31, 1934. On November 29, 1930, the board of directors of petitioner adopted a resolution authorizing its executive officers to guarantee any loans Hillman might make to the Investment Co. with the approval of petitioner's executive officers. Petitioner advised Hillman by letter of the substance of the resolution. On November 29, 1930, the stock of the Investment Co. was owned by J. H. Hillman, Jr., A. B. Sheets and Ernest Hillman, the principal stockholders of petioner. Thereafter Hillman made four loans to the Investment Co., two in 1930 in the aggregate amount of $400,000, one in 1931 in the amount of $250,000, and the last one on June 1, 1934, in the amount of $100,000, a total *323 of $750,000. The principal amount of the loans, plus $91,916.67 for interest from January 1, 1931 to July 31, 1934, a total of $841,916.67, was unpaid on July 31, 1934. Of this interest, $32,963.88 was accrued on Hillman's books in 1931. No accruals were made in 1932 and 1933. On July 31, 1934, it accrued the remaining interest in the amount of $58,952.79. Interest in the amount of $2,000 was paid on the loans in 1930. The amounts were included in the income tax returns of Hillman in the respective years in which the interest was paid or accrued by it. On July 31, 1934, petitioner purchased the accounts from Hillman for $841,916.67 cash. On the same day it transferred to petitioner the 750 shares of stock it owned of the Investment Co. On July 31, 1934, petitioner's officers believed that the solvency or insolvency of the Investment Co. depended upon the future value of securities held by the Investment Co.
Prior to April 27, 1931, petitioner made loans or advances to the Investment Co. The balance due petitioner for principal was $297,000 at all times after that date. All of the interest to December 31, 1931, on the indebtedness was paid with the exception of $4,020.46, which amount *324 remained unpaid until December 28, 1934. All of the interest to December 31, 1931, the last date on which the account was balanced, was accrued upon the books of petitioner and was reported as income in its income tax returns. No interest on the indebtedness was accrued by petitioner or reported by it for taxation subsequent to December 31, 1931, because it was uncollectible from the debtor. On August 1, 1931, the Investment Co. purchased from Thomas Watson 2,679.35 shares of stock of Trans-America Corporation, giving in payment therefor its note for $140,250 to petitioner, Watson's nominee. Petitioner applied the note at its face value in settlement of Watson's note for $128,750, held by petitioner, plus interest thereon of $11,500, in accordance with a written commitment made by it to Watson on October 1, 1929. At a meeting held on December 18, 1934, the board of directors of petitioner adopted a resolution directing its executive officers to enter into such agreements as they may deem necessary with other creditors of the Investment Co. to liquidate the affairs of and dissolve the Investment Co. by the sale of its assets or the distribution thereof in kind to its creditors pro *325 rata. On December 28, 1934, the books of the Investment Co. showed that its indebtedness consisted of $774,872.88 of secured debts and the following unsecured debts, totaling $5,566,458.74: Hecla Coal & Coke Co.
$4,080,717.15
Petitioner
1,387,874.47
Luzerne Coal & Coke Co.
81,704.66
Ernest Hillman
16,162.46
On December 28, 1934, the Investment Co., Hecla, petitioner, Luzerne and Ernest Hillman entered into an agreement providing for payment of the corporation's debts and transfer of its assets. One of the preamble clauses of the instrument recited that: WHEREAS the parties hereto, being the general unsecured creditors of Investment Company, desire to liquidate its assets, wind up its affairs, and effect the dissolution of Investment Company as a corporation, but prefer to liquidate, wind up and dissolve Investment Company by amicable agreement in order to avoid the expenses and delays of court proceedings. Clause First of the agreement provided for payment of current operating expenses and minor items of indebtedness to creditors not parties to the instrument in full with the exception of collateral loans, "which at the option of the parties may either be paid or *326 permitted to go by default." Other clauses of the instrument recited that the "Investment Company does hereby sell, assign, transfer and set over unto * * *" the creditors, parties to the agreement, certain listed property and cash. Part of the Sixth clause and the Eighth clause of the agreement read as follows: SIXTH: Investment Company has granted, sold and conveyed the assets enumerated in Paragraphs SECOND, THIRD, FOURTH and FIFTH hereof to the respective grantees, to have and to hold said assets to said grantees, their successors, heirs and assigns for their own proper use and exclusive use, benefit and behoof, and without any further interest whatsoever in Investment Company. * * * * * * * *
EIGHTH: Hillman, Luzerne, Hecla and Hill-Man & Sons Company hereby accept transfers of securities to them as herein mentioned, as payment in full of their entire claim, charge and demand against Investment Company, and hereby release, exonerate and discharge Investment Company from all liability for the payment of the unpaid balance of Investment Company's indebtedness. Attached to the agreement were lists of assets transferred to the parties. Each was captioned "Schedule of Distribution" *327 and was referred to as such in the agreement. Each creditor executing the instrument received from the Investment Co. cash and assets of an estimated value equal to about 60 per cent of his or its claim as shown by the books of the Investment Co. The estimated value of the assets received by petitioner was $835,019.95. The property received by petitioner had a fair market value of $393,396.09. The assets received by petitioner were entered on its books on December 28, 1934, at a value of $835,019.95. The difference of $448,167.18 between this amount and the amount of $1,283,187.13 shown by petitioner's books to be due from the Investment Co. was charged off petitioner's books to profit and loss on December 28, 1934. In June 1934 the respondent determined a deficiency of $171,287.12 in income tax against the Investment Co. for 1929. The Investment Co. contested the deficiency in a petition filed with this Court. The deficiency was not listed among the liabilities of the Investment Co. and in the December 28, 1934, distribution no portion of the corporation's assets was set aside for payment of the proposed deficiency, plus interest, finally determined to be due. Pursuant to stipulation *328 this Court entered a decision in the proceeding on April 29, 1937, that the deficiency was $100,000. Hecla, petitioner, Luzerne and Ernest Hillman, as transferees of the assets of the Investment Co., discharged the tax liability by payments made on June 1, 1937. The amount paid by petitioner was $35,742.37, consisting of $24,932.80 tax and $10,809.57 interest. Of the interest paid, $7,168.33 was for interest to December 28, 1934, and $3,641.24 from that date to the time of payment. The amount paid by petitioner was not allowed as a credit or deduction in computing the taxable net income of petitioner for any year. Opinion 1. We first consider whether the petitioner is entitled to a deduction for worthless debt in the amount of $394,643.95. The facts involved in this issue, briefly stated, are these: Petitioner and other corporations, including Thompson, filed a consolidated return for 1920, each corporation paying to petitioner an amount regarded as its share of the consolidated tax liability. Thompson and its subsidiary paid $394,643.95 to the petitioner in 1921. The tax liability shown to be due on the return was assessed against and paid by petitioner. In January 1926 the Commissioner *329 notified petitioner that Thompson was not affiliated with it. In November 1926 petitioner executed and delivered to Thompson a demand note for $394,693.95, the amount of its contribution. In January 1927 Thompson consented to a separate assessment against it and authorized the Commissioner to refund to petitioner the taxes paid by it through petitioner. Petitioner sold some stock to Thompson and in June 1927 accepted its own note for the $394,643.95, as part payment for the stock. In December 1927 the Commissioner determined a deficiency against Thompson and its subsidiary based upon tax liability of $529,764.66. Thompson appealed the deficiency to this Court. In July 1934 the tax liability under the 1920 consolidated return was settled by allocation of all of the tax liability and assessments to petitioner. This resulted in an overassesment against petitioner of about $1,191,000, which amount, with interest of about $618,000, was refunded to petitioner the same month. Tax liability of $364,564.48 was determined against Thompson and its subsidiary in the settlement. Settlement with the corporation which had reported their tax liability in the consolidated return was authorized at *330 a meeting of petitioner's directors on July 23, 1934. The minutes set forth that the note given Thompson "should have been cancelled in this adjustment" but that it had been paid in full on June 30, 1927; and that Thompson was hopelessly insolvent and authorized the charge-off as uncollectible "of $394,643.95 due from" Thompson. The charge-off was made on the books July 31, 1934, by a debit of Profit and Loss and a credit to the collector of internal revenue. Upon brief petitioner does not allege that it or Thompson recognized a debtor and creditor relationship respecting the amount until after the tax settlement in July 1934. It contends that the amount of the note is deductible as a debt ascertained to be worthless and charged off in 1934 or as a loss sustained in that year. Respondent argues that petitioner has failed to show an indebtedness from Thompson or that any debt was ascertained to be worthless in the taxable year. We do not think the petitioner may soundly base the deduction upon the theory that the note was in force in 1934 and was subject to worthlessness. The object of the note was conditionally to refund to Thompson its contribution to petitioner for 1920 income *331 tax liability. After the delivery of the note Thompson consented to a separate assessment against it and a refund of its contribution to petitioner, payment of the note by petitioner being then conditioned upon a duplicate tax payment by Thompson. Before this contingency occurred, the note was accepted by petitioner at its face amount in part payment of stock. This transaction terminated the rights and obligations of the parties under the instrument. Petitioner so treated the note, for it charged the amount thereof to its Bills Payable account, and it does not appear as an asset in balance sheets of Thompson. Under the circumstances, the note ceased to be an instrument capable of a future charge-off for worthlessness. In fact, that theory is not followed by the petitioner, for it admits upon brief: The payment by petitioner of its note to Thompson Connellsville on June 30, 1927 as aforesaid apparently terminated all creditor-debtor relationships between petitioner and Thompson Connellsville. But upon December 20, 1927 another event occurred which eventuated in the creation of a new creditor-debtor relationship between petitioner and Thompson Connellsville, namely, upon December 20, *332 1927, the respondent mailed a notice of deficiency to Thompson Connellsville determining a tax liability of $520,493.78 for the year 1920, against which the respondent applied a credit for $355,293.60, charging the same against the payment made by the petitioner upon the consolidated return for 1920. * * * After reciting the facts, including Thompson's appeal and the settlement between the Commissioner, including the fixing of the tax liability for Thompson at $364,564,48, the petitioner further states: Under the foregoing facts which are undisputed, it follows as a conclusion of law that Thompson Connellsville became indebted to petitioner for money paid by petitioner for the account of Thompson Connellsville in the aforesaid settlement made during the taxable year 1934. We agree that only the happening of subsequent events unfavorable to petitioner could give rise to further liability on the part of Thompson to petitioner. No agreement expressly relating to such liability is alleged by petitioner and we find none in the record. On June 30, 1927, there was pending before the Commissioner a claim of petitioner that taxes paid on behalf of Thompson be refunded to it. Such a refund *333 to petitioner, coupled with a separate assessment against Thompson had been authorized by Thompson and was not withdrawn. Instead of making refund to petitioner of the full amount of the contribution, which would have enabled petitioner to balance accounts without a claim against Thompson, the Commissioner, properly or improperly charged Thompson's tax liability to petitioner in the final settlement, and Thompson escaped further payment. This act reduced the amount of the refund petitioner would have otherwise received, and resulted in the loss in question. The effect of the settlement in that manner was that petitioner paid Thompson's taxes with its implied consent and Thompson was relieved of possibility of a separate assessment against it. In any event, funds contributed by Thompson for its own tax liability and subsequent, in effect, refunded to it by petitioner in the stock transaction were used by the Commissioner to reduce the refund to petitioner, with the result that petitioner under all the circumstances was deprived of the amount of the taxes thus paid from its funds. This course of events, coupled with the determination of a deficiency against Thompson in December 1927, *334 is contended by petitioner to have created a new debtorcreditor relationship. Thompson so recognized it. It is also contended that the result was a loss. We need not decide the specific question whether it was bad debt or loss. If it resulted in a debt, it was worthless when it arose. If considered as a matter of loss, the settlement was not made until 1934 and the financial detriment sustained did not arise until then and was suffered at that time on account of Thompson's insolvency. Petitioner is entitled to the deduction. We do not think, however, that it was out of pocket the full amount of the original tax contribution of $394,643.95. The settlement was made on the basis of tax liability of Thompson in the amount of $364,564.48. The amount of the tax contribution of Thompson in excess of $364,564.48 apparently was included in the refund and was not lost to the petitioner. We hold that petitioner is entitled to a deduction of $364,564.48 under this issue. 2. We now consider the contention as to deduction of $448,167.18 (as originally claimed) as worthless debt. The claim grows out of the fact that on December 28, 1934, the petitioner as one of the creditors of Investment Co. *335 received, pursuant to agreement among Investment Co. and its creditors, as its portion of distribution of the Investment Co.'s assets in kind, in satisfaction of its debts, certain assets then valued at $835,019.95, which petitioner applied against the charges upon its books against Investment Co., totaling $1,283,187.15. These charges consisted of an account of $297,000, with interest of $4,020.46 a note of $149,250 including interest, and certain claims against Investment Co. which the petitioner had purchased from Hillman at a cost of $841,916.67 on July 31, 194 at a cost of $841,916.67 on July 31, 1934. The difference of $104,687.34 between the total of these amounts and the indebtedness of $1,387,874.47 shown by the books of the Investment Co. is alleged by petitioner to be attributable to accrual of interest by the Investment Co. and not by petitioner. In its income tax return for 1934, petitioner claimed a deduction for worthless debt of $448,167.18, the difference between the amount set up on its books on account of the above claims and $835,019.95, the value at which it received the property. On account of a stipulation between the parties that the property received by petitioner *336 had, in fact, a value of $939,396.09, the difference between such stipulated value and the value originally used, amounting to $104,376.14 is deducted from the claim for reduction, reducing it to $343,791.04. In addition, the parties stipulated that in 1937, petitioner, as a transferee, paid $35,742.37 as its proportionate share of a deficiency plus interest, determined against the Investment Co. in June 1934 for 1929. The Investment Co. contested the liability before this Court until April 1937, when the proceeding was settled by stipulation. Petitioner did not claim deduction of the item in its return or petition, but on brief included it in the amount claimed as a deduction; thereby making its total claim for worthless debt $379,533.41; but otherwise does not discuss it upon brief. The amount does not constitute a deduction in the taxable year 1934, for it was not only not payable by the Investment Co. in that year, but was not therein ascertained to be worthless or charged off. We therefore proceed to consider the claim for deduction of $343,791.04. In his determination of the deficiency the respondent assigned no reason for disallowing the deduction claimed on the return. Upon *337 brief he contends (a) that the transaction of December 28, 1934, whereby the petitioner received the assets which it credited to its charge against Investment Co., was a purchase of assets and can not serve as a basis for a bad debt deduction; (b) that the assets were received in full payment of petitioner' claims, leaving no claim for bad debt; (c) that the amount of $841,916.67 paid by petitioner to Hillman for its claims against the Investment Co. was far in excess of the value of the claims and was not made in an arm's-length and bona fide transaction, and (d) that petitioner acted as a mere volunteer in assuming the loss of Hillman, it not being legally bound as a guarantor. We do not think the transfer of assets to petitioner and other creditors of the Investment Co. on December 28, 1934, was a sale. The Investment Co. was and had been for some time in financial difficulties. The officers of the corporations which owned all of the stock and comprised substantially all of the creditors of the Investment Co. met and considered the matter of causing the Investment Co. to wind up its business by distributing its assets among its creditors and then to dissolve. Later, on October *338 23, 1934, petitioner's board of directors authorized its officers to liquidate the affairs of the Investment Co. by the sale of its assets or the distribution thereof in kind among its creditors pro rata. The latter action was taken. Current operating expenses and minor items representing indebtedness to creditors, other than Hecla, petitioner, Luzerne and Ernest Hillman, parties to the distribution agreement of December 27, 1934, were paid in full and the parties to the agreement received assets worth about.6016538 per cent of their claims. The transaction has not the characteristics of a purchase and sale of assets. The parties stipulate that the assets of Investment Co. were "distributed in kind". The intention was to liquidate the affairs of the Investment Co. by pro rata transfer of its assets among its creditors and this was carried out. The acceptance by the holder of a note, of property in satisfaction thereof does not constitute a purchase and sale. ; . The fact that the property was received in full payment of petitioner's *339 claims and that it discharged the Investment Co. from liability for payment of the balance does not deprive petitioner of the right to claim the unrecovered portion of its claims as a bad debt deduction. ; ; ; ; ; . The case of , is distinguhshable. There the transfer was made on the basis of cost of the property to the debtor, which might have been considerably less than fair market value. The question of guaranty, and whether the petitioner was bound thereby so as to have basis for deduction, does not involve the advances made directly by petitioner to the investment Co. on which there was a balance of principal of $297,000, with interest of $4,020.46, or the note for *340 $140,250. This leaves for consideration on this point only the $841,916.67 item, consisting of advances made by Hillman to Investment Co. in 1930, 1931 and 1934 in the principal amount of $750,000 plus unpaid interest thereon of $91,916.67, under the alleged guaranty of petitioner. The discussion of the item by the parties upon brief refers to petitioner both as a guarantor of the advances made by Hillman and as a purchaser of Hillman's claims against the Investment Co. Respondent argues that petitioner was a mere volunteer, for it could not have been held legally liable as a guarantor, upon the ground that no contract of guaranty was ever entered into, the resolution of November 29th, 1930, not being sufficient for that purpose. If petitioner did, by the resolution or otherwise, become bound as a guarantor, there is no proof that any liability was ever imposed upon it because of default of the principal debtor. The advances made in 1930 and 1931 in the aggregate amount of $650,000 were received by the Investment Co. on open account and the last advance made on July 1, 1934, in the amount of $100,000 was evidenced by a demand note. We do not know the maturity dates of the advances *341 made in open accounts or whether the guarantee, Hillman, ever presented the note for payment. Thus the record is without evidence proving that the liability of a grantor was ever imposed upon petitioner by reason of any default of the principal debtor. Assuming that there was such default as to make petitioner liable to Hillman under the contract of guaranty, that liability ceased and was merged in ownership when petitioner acquired the guaranteed claims from Hillman by purchase on July 31, 1934, at their face amount, plus interest. The stipulation provides that the accounts, note and interest "were sold and assigned by Hillman to petitioner" in consideration for a cash payment of $841,916.67. The parties are bound by the stipulation. We therefore consider the guaranty eliminated, and further consideration of the issue will be upon the ground that petitioner asserted the claim for worthless debt as an assignee of Hillman by purchase, not under rights of subrogation as a guarantor. A purchased debt, in order to be a basis of a deduction for worthless debt, must have value when purchased. ; ; *342 ; certiorari denied April 5, 1943; ; ; . In , affirming , a corporation acquired the assets and assumed the liabilities of a partnership of which the taxpayer was a member. The liabilities included notes payable to a bank for money loaned to the partnership. The bank accepted notes of the corporation, endorsed by petitioner and his former partner, for the partnership notes. Later, upon the inability of the bank to collect from the corporation, petitioner and his former partner gave the bank their joint note in settlement of their liability as endorsers of the corporation's notes, receiving in return the corporation's notes marked "paid". The court held that the taxpayer was not entitled to a bad debt deduction "because the debt was worthless when the taxpayer acquired it". In affirming *343 the decision the Supreme Court said: "It seems to us that the Circuit Court of Appeals sufficiently answered this contention [that the debt was ascertained to be worthless and charged off within the taxable year] by remarking that the debt was worthless when acquired. There was nothing to charge off." . The petitioner here is seeking deduction as worthlessness of debt of the difference between $841,916.67, which it paid for the claims against Investment Co. and the value of the assets received on December 28, 1934, apportioned to payment of such claim. Under the above cases the petitioner may not properly be allowed as deduction more than the difference between the value of the claims when acquired and the amount received in property for them. The record furnishes us the value received for them, since to arrive at that figure we need only apportion the value of the entire property received for all claims, pro rata among the respective claims. But the record, although it does not indicate complete worthlessness of the claims at the time of their acquisition on July 31, 1934, fails altogether to show whether value at that *344 date was more than the amount received later for the claims. The mere fact that the petitioner paid for them $841,916.67 is, under all the circumstances here involved, plainly insufficient to establish that value, particularly since the figure includes $91,916.67 interest, which is stipulated to have been uncollectible. The value of the claims when acquired is, under the evidence, wholly problematical. In its reply brief, the petitioner correctly states the facts as follows: * * * On July 31, 1934, when the petitioner took over the claims of Hillman Coal & Coke Co. against the Investment Co. it was uncertain whether the Investment Co. was solvent or insolvent. It was a question of working out the securities of the Investment Co. and whether values would reassert themselves. * * * In the face of such a record, we may not, under the above authority, conclude that the petitioner in the taxable year and as to the item of $841,916.67 ascertained worthlessness of debt. We find no error in the Commissioner's determination with respect to that item. The items of $297,000 plus interest thereon of $4,020.46, and $140,250 were not purchased, and as to them it is clear that the petitioner in *345 the taxable year ascertained worthlessness above the amounts recovered thereon. Since the Investment Co. received satisfaction of debts of $1,387,874.47 for property of a value of $939,396.09, or 67.68595595 per cent, we hold the petitioner by the transaction of December 28, 1934, recovered upon the $301,020.46 and $140,250 items to the extent of $ 939,396.09 / $1,387,874.47 ths or 67.68595595 per cent thereof, amounting to $298,678.13, leaving the remainder of $142,592.33 as the amount ascertained to be worthless and charged off. Accordingly, we hold that of the amount claimed, $142,592.33 is deductible as a debt ascertained to be worthless and charged off. 3. There remains for consideration the question as to reduction of undistributed adjusted net income because of alleged payment of $874,055.15 on indebtedness incurred prior to January 1, 1934, within the purview of section 351 of the Revenue Act of 1934. The petitioner has abandoned so much of the issues as relates to the item in the principal amount of $750,000. This leaves in controversy the following items of principal indebtedness, totaling $124,055.15, which were paid by petitioner in July 1934: Luzerne
$12,018.54
Hillman
95,985.61
Transportation Co.
16,051.00
*346 In addition to these principal amounts petitioner is asking that we also allow under section 351 reduction by reason of interest of $9,448.58, $48,552.69, and $12,158.63 on the respective items of principal indebtedness. In the case of the Hillman item it reduced the total of principal and interest by an offsetting credit of $42,139.94 for a deficiency of $27,984.47 and interest thereon of $14,155.47 charged to it by the Commissioner in the final settlement for 1920 consolidated tax liability. Petitioner contends that the amounts come within the provisions of section 351 (b) (2) (B). [1] Respondent argues, in effect, that the notes were issued to place petitioner in a position to claim and obtain refunds and that payment was contingent upon the receipt of refunds for 1920 taxes. He makes no contention that the amounts are not reasonable. *347 The deductibility of the principal indebtedness to Luzerne and Hillman is not open to serious doubt. The former item arose by reason of an excess payment of $12,018.54 to petitioner for 1917 income and excess profits tax liability reported in a consolidated return. Luzerne settled its tax liability with the Commissioner in June 1925 and received credit for only $22,779.10 of the amount of $34,797.64 paid to petitioner in 1918. Petitioner settled its tax liability for 1917 in August 1926. In the meantime, Luzerne discovered the overpayment of $12,018.54 and charged petitioner with the amount thereof. The item has no connection with tax liability for other years. The principal indebtedness was incurred not later than August 1926 and comes within the letter of the statute. The situation respecting the indebtedness to Hillman is somewhat similar. Hillman paid to petitioner in 1920 the amount of $95,985.61 as its share of the tax shown to be due in a consolidated return filed by them for 1919. Subsequently the Commissioner held that they were not affiliated and determined separate deficiencies against them, petitioner on July 31, 1926 and Hillman on March 11, 1927. Petitioner paid the *348 deficiency on August 7, 1926, and waived its right of appeal. In making the payment petitioner received credit for the payment of $95,985.61 made by Hillman to it under the consolidated return. Hillman compromised the deficiency asserted against it and paid the agreed amount to the collector on July 31, 1934, without any credit for the $95,985.61 previously paid under the consolidated return. Thus it is apparent that the petitioner received a direct benefit from the contribution made to it by Hillman and that the liability of petitioner to Hillman became definite on August 7, 1926, on March 11, 1927. The facts surrounding the alleged indebtedness to the Transportation Co. do not require a different conclusion. It paid $364,451.74 to the petitioner in 1921 as its and its subsidiary's share of the 1920 consolidated tax liability. In February 1927 the Commissioner concluded that the Transportation Co. and its subsidiary were not affiliated with petitioner and determined tax liability of $348,400.74, against which he applied a credit of $364,451.74, resulting in an overpayment of $16,051. In December 1927 he determined a deficiency aggregating $73,508.69 against the Transportation Co. *349 and its subsidiary, based upon the same tax liability, and assessments totaling $274,892.05. Petitioner paid the deficiency in April 1929 and charged the amount to the note issued in favor of the Transportation Co. on November 8, 1926, for $364,410.70. This payment settled the tax liability of the Transportation Co. and its subsidiary for 1920 and fixed the liability of petitioner to them in the amount of $16,051. The respondent did not at any time thereafter alter his conclusion as to the affiliated status of the Transportation Co. and its subsidiary or redetermine their tax liability. The situation was not changed by the payment of $73,508.69 made by the petitioner. The deficiency resulted from the refusal of the Commissioner to allow as a credit an amount of the original tax contribution in excess of $274,892.05. Petitioner was under no obligation to make the payment for the Transportation Co. and if the latter had paid it from its own funds, petitioner would still have been liable for the overpayment to it of $16,051, and the Transportation Co. would have had a claim against the Commissioner for failure to apply the entire contribution of $364,451.74 against its tax liability. *350 What has been said on this point relates only to the principal indebtedness of petitioner and is not applicable to the interest paid. The respondent does not discuss the point as to interest in his brief. On July 31, 1934, petitioner computed interest from specified dates to July 31, 1934, on the principal amounts of indebtedness and charged the amounts thereof to an interest account with a balancing credit to the note holders. The interest was computed from June 24, 1921, on the Luzerne note; from February 26, 1926, on the Hillman note; and from December 15, 1921, on the Transportation Co. note. The surtax is imposed upon undistributed adjusted net income of holding companies. Section 351 (a). The term "undistributed adjusted net income" means adjusted net income less certain items including amounts paid to retire indebtedness incurred prior to January 1, 1934. Section 351 (b) (2). The term "adjusted net income" means net income minus specified items not applicable to the question here. The term "net income" used in section 351 has the same meaning as used in Title I. Section 351 (b) (4). The meaning of net income in Title I is gross income computed under section 22, less the *351 deductions allowed by section 23. Section 23 (b) allows as a deduction interest paid or accrued within the taxable year on indebtedness. It is clear from this prescribed method of computing undistributed adjusted net income that interest paid on indebtedness is deductible in determining the net income under Title I. The statute does not provide for double deductions. Article 351-4, Regulations 86. Allowance of interest as a deduction under section 23 and also under section 351 (b) (2) (B) would constitute a double deduction contrary to the intent of the statute. All of the interest in question was accrued on petitioner's books and paid by it within the taxable year. Petitioner does not contend that the amount was not allowed as a deduction in the computation of net income under Title I for the purpose of determining undistributed adjusted net income under section 351, and there is nothing of record to prove that it was not claimed and allowed as a deduction. Under the circumstances we must assume that the items of interest were taken into account computing net income. It follows that no part of it is deductible under section 351 (b) (2) (B). The principal of the indebtedness, aggregating *352 $124,055.15, constitutes indebtedness incurred prior to January 1, 1934, and is deductible in computing petitioner's undistributed adjusted net income. Decision will be entered under Rule 50. Footnotes
1. Merged with Hillman after return filed.↩
1. SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES. * * * * *
(b) DEFINITIONS. - As used in this title - * * * * *
(2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of: * * * * *
(B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness; and↩